UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JOSEPH VICKERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 18-CV-52-TCK-FHM ) *(formerly Tulsa County District Court* |
| (1) JORDAN RUSSELL RAHMAN, and | ) *Case No.: CJ-2017-884)* ) |
| (2) PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) |
| Defendants. | ) ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, the Defendant, Progressive Northern Insurance Company ("Progressive" or "Defendant"), hereby removes the state court action, *Joseph Vickers v. Jordan Russell Rahman, and Progressive Northern Insurance Company*, Case No. CJ-2017-884, from the District Court of Tulsa County, State of Oklahoma, to this Court. Pursuant to LCvR 81.2, a copy of the State Court Docket Sheet as well as all documents filed or served in the State Court action are attached hereto as **EXHIBITS 1-57**.

The removal of this case to federal court is based on the following:

### FACTUAL BACKGROUND

1. This lawsuit arises out of an automobile accident that occurred on January 10, 2015, between Plaintiff, Joseph Vickers ("Plaintiff"), and Jordan Russell Rahman ("Rahman"). (*See* Amended Petition, **EXHIBIT 9**.)

2. Plaintiff alleges that Rahman "negligently, carelessly and without warning [drove] a motor vehicle into the Plaintiff's vehicle." (*See* Amended Petition, ¶ 10, **EXHIBIT 9**.)

3.  According to Plaintiff, as a result of the subject accident, he "suffered personal injury to his knee, upper back and neck." (*See* Amended Petition, ¶ 13, **EXHIBIT 9**.)

4.  Plaintiff claims that as a result of the subject accident, the underinsured motorist coverage issued to him by Progressive was triggered. (*See* Amended Petition, ¶¶ 16-18, **EXHIBIT 9**.)

5.  According to Plaintiff, "Progressive improperly and wrongfully and in bad faith breached its contract with Plaintiff and denied Plaintiff's UM claim in material part." (*See* Amended Petition, ¶ 19, **EXHIBIT 9**.)

6.  On March 7, 2017, Plaintiff filed the present lawsuit against Rahman and Progressive. (*See* Petition, filed March 7, 2017, **EXHIBIT 2**.)

7.  On May 11, 2017, Plaintiff filed his Amended Petition. Plaintiff asserted a common law negligence claim against Rahman. Plaintiff asserted claims for breach of contract and bad faith against Progressive. (*See generally*, Amended Petition, filed May 11, 2017, **EXHIBIT 9**.)

8.  In his Amended Petition, Plaintiff "prays for judgment against the Defendant Progressive in an amount in excess of $75,000.00 as and for general and special damages; as well as punitive damages against the Defendant in an amount in excess of $75,000.00, together with pre-judgment and post-judgment interest, attorney fees, costs, and any other relief this Court deems just and equitable." (*See* Amended Petition, p. 6, **EXHIBIT 9**.)

9.  On or about January 19, 2018, Progressive was informed that Plaintiff had accepted a settlement offer made by Rahman. Specifically, on January 19, 2018, Rahman's counsel sent the following correspondence to counsel for the parties involved:

> Hello John ~
>
> Thank you for your acceptance of our last offer. We didn't discuss it, but I'm assuming that means that my client's deposition, currently scheduled for January 26, 2018, will NOT happen. I've cc'd Brad on this as well, to make sure we are all in agreement that my client has

>no further obligations and is not needed in any continued litigation on this matter.
>
>Please confirm so I can let him know.
>
>Reign Karpe, Attorney
>Angela D. Ailles and Associates
>Employees of the Law Department
>State Farm Mutual Automobile Insurance Company
>Office: (405) 475-9707
>Direct Line: (405) 419-2657
>Fax: 1-855-396-2580

(Email correspondence from R. Karpe, dated January 19, 2018, **EXHIBIT 58**.)

10. Subsequently, Plaintiff's counsel confirmed the settlement. (*See* Email correspondence from J. Thetford, dated January 19, 2018, **EXHIBIT 59**.)

## JURISDICTION

11. "'Federal courts are courts of limited jurisdiction. They possess only the power authorized by the Constitution and statute . . . .'" *Rasul v. Bush*, 542 U.S. 466 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). For a federal court to have original jurisdiction over a case or controversy, there must exist a federal question or diversity jurisdiction.

12. At the time the Petition was filed, federal question jurisdiction did not exist. Specifically, there were no allegations that the Constitution or any federal statute had been violated. (*See generally*, Petition, **EXHIBIT 2**.)

13. However, as shown below, pursuant to 28 U.S.C. § 1332(a)(2), this action is a civil action over which this Court has original jurisdiction. The real-parties in interest are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

## THE AMOUNT IN CONTROVERSY

14.     The Tenth Circuit has explained "[t]he right of removal depends upon the case disclosed by the pleadings when the petition therefore is filed." *Woerter v. Orr*, 127 F.2d 969 (10th Cir. 1942). As disclosed by the pleadings, Plaintiff is seeking damages in excess of $75,000.00 from Progressive.

15.     Specifically, Plaintiff's Amended Petition "prays for judgment against the Defendant Progressive in an amount in excess of $75,000.00 as and for general and special damages; as well as punitive damages against the Defendant in an amount in excess of $75,000.00, together with pre-judgment and post-judgment interest, attorney fees, costs, and any other relief this Court deems just and equitable." (*See* Amended Petition, p. 6, **EXHIBIT 9**.)

16.     Based on the foregoing, the amount in controversy requirement of § 1332 is met.

## THE CITIZENSHIP OF THE PARTIES

17.     According to Plaintiff's Petition, at the time of filing, he was a resident of the State of Oklahoma. (*See* Petition, ¶ 1, **EXHIBIT 2**; Amended Petition, ¶ 1, **EXHIBIT 9**.) Therefore, upon information and belief, Plaintiff is a citizen of the State of Oklahoma.

18.     Upon information and belief, at the time of filing, Rahman was a resident of the State of Oklahoma. (*See* Petition, ¶ 2, **EXHIBIT 2**; Rahman's Answer, ¶ 5, **EXHIBIT 4**; Amended Petition, ¶ 2, **EXHIBIT 9**.) Therefore, Rahman is believed to be a citizen of the State of Oklahoma. However, as noted above, Plaintiff has settled his claim against Rahman. Thus, at this time, Rahman is a nominal party and may be disregarded for purposes of diversity jurisdiction.

19.     For purposes of diversity jurisdiction, a corporation shall be deemed a citizen of any State by which it has been incorporated and the State where it has its principal place of business. *See* 28 U.S. 1332(c). While Congress did not define "principal place of business," the Supreme

4

Court has held that a corporation's principal place of business is presumed to be the place of the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010).

20. At the time of filing, Progressive was a foreign corporation, incorporated under the laws of the State of Wisconsin with "nerve center" or "principal place of business" in Ohio. (*See* Annual Statement of Progressive Northern Insurance Company, **EXHIBIT 60**.) Thus, Progressive is deemed to be a citizen of the States of Wisconsin and Ohio. Progressive was not a citizen of the state of Oklahoma.

21. When this lawsuit was filed, it was not removable because complete diversity did not exist. However, Plaintiff has settled his claims against Rahman, the non-diverse Defendant.

22. Title 28 U.S.C. § 1446, provides in pertinent part:

> [I]f the case stated by the initial pleadings is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

23. As the Tenth Circuit has explained, "in determining the question of diversity we look to the citizenship of the real parties in interest[.]" *Becker v. Angle*, 165 F.2d 140, 142 (10th Cir. 1927); *see also Cunningham v. EHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1244 (10th Cir. 2005); *Charles v. GEICO General Ins. Co.*, 2006 WL 1096599 (D. Alaska); *Hann v. City of Clinton Okl., ex rel. Schuetter*, 131 F.2d 978, 981 (10th Cir. 1942) ("In determining the question whether diversity of citizenship requisite to jurisdiction exists, a court looks to the citizenship of the real parties in interest, and where there is complete diversity between them, the presence of a nominal party with no real interest in the controversy will be disregarded."); *Strotek Corp v. Air Transportation Ass'n of Am.*, 300 F.3d 1129, 1133 (9th Cir. 2002) ("Defendants who are nominal

parties with nothing at stake may be disregarded in determining diversity, despite the propriety of their technical joinder.")

24. Although Plaintiff has not dismissed Rahman from this lawsuit, the Court need not rely on actions taken by a plaintiff following a voluntary settlement with the non-diverse defendant, as they are irrelevant for jurisdiction. *See Turley v. Stilwell*, 2011 WL 1104543, at *6 (N.D. Okla. March 22, 2011). Upon Plaintiff's acceptance of Rahman's settlement offer, Rahman is no longer a real-party in interest. Therefore, he is not considered for purposes of diversity jurisdiction. *See Becker*, 165 F.2d at 142. In other words, this lawsuit became removable the moment Plaintiff accepted Rahman's settlement offer. *See Turley*, 2015 WL 1104543, at *9.

25. Disregarding the nominal Defendant, Rahman, the complete diversity requirement of § 1332 is met.

### RAHMAN'S CONTINUED JOINDER IS FRAUDULENT

26. As a result of Plaintiff's settlement with Rahman, he can also be disregarded as fraudulently joined for the sole purpose of destroying diversity.[1]

27. Any Defendant who has been improperly or fraudulently joined must be ignored for diversity purposes. *Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). Despite the nomenclature, fraudulent joinder "does not reflect on the integrity of the plaintiff or counsel, but exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant." *Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1085 (D. Kan. 2006). The reason for this doctrine is that a plaintiff who joins a non-diverse defendant with the sole purpose of defeating removal is acting unfairly toward the

---

[1] Progressive recognizes that relatively little time has elapsed since it received notice of Plaintiff's settlement with Rahman. However, for the reasons discussed below and out of an abundance of caution, Progressive raises the present fraudulent joinder argument.

non-diverse defendant, who should not be a party, and to the diverse defendant, whose statutory right is unjustly prohibited. *Wilson v. Republic Iron & Steel*, 257 U.S. 92, 98, 42 S. Ct. 35, 37-38, 66 L. Ed. 144 (1921).

28. As the removing party, a defendant bears the burden of establishing that jurisdiction is proper. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001). Assuming that the requisite amount in controversy can be satisfied, a removing defendant does not have to show that the plaintiff committed outright "fraud" in pleading the jurisdictional facts. Rather, the removing defendant can simply show that there is no real possibility of recovery against the non-diverse defendant. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 & n. 3 (5th Cir. 1992).

29. In *Slover v. The Equitable Variable Life Ins. Co.*, 443 F.Supp.2d 1272 (N.D.Okla. 2006), the court discussed the protocol for situations in which a defendant believes that non-diverse co-defendants have been improperly joined:

> Because Defendants have alleged fraudulent joinder, the Court may pierce the pleadings. *Hale v. MasterSoft Int'l Pty. Ltd.*, 93 F.Supp.2d 1108, 1113 (D.Colo. 2000). Thus, the Court may consider certain underlying facts--such as the insurance policy at issue here--to determine whether the non-diverse parties are proper. *Smoot v. Chi., Rock Island & Pac. R.R.*, 378 F.2d 879, 882 (10th Cir.1967) ("[U]pon specific allegations of fraudulent joiner the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.") (Internal citations omitted). The standard, however, is stringent, and the Court must resolve any ambiguities in Plaintiffs' favor. *Martin*, 251 F.3d at 1289-90 ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.") (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)).

*Id.* at 1276. This Court went on to say:

> "If outright fraud in the pleading of jurisdictional facts cannot be proven, ***the question becomes more closely akin to that of whether the plaintiff has properly stated a claim upon which relief may be granted*** under Fed.R.Civ.P. 12(b)(6). *See Frontier Airlines, Inc. v.*

7

> *United Air Lines, Inc.*, 758 F.Supp. 1399, 1404 (D.Colo. 1989); *Fine v. Braniff Airways, Inc.*, 302 F.Supp. 496, 497 (W.D.Okla. 1969).

*Id.* at 1278 -1279 (emphasis added). The *Slover* court concluded by making the succinct but meaningful observation that, "if the plaintiff clearly cannot maintain a state law claim against the non-diverse defendant . . . such defendant shall be considered fraudulently joined." *Id*. at 1279.

30. Settlement agreements are contracts. *See Russell v. Bd of Cnty Comm'rs*, 1 P.3d 442, 443 (Okla. Ct. App. 2000); *Rader v. Farmers Insurance Co., Inc.*, 934 P.2d 332, 334 (Okla. 1997); *Corbett v. Combined Commc'n Corp. of Okla., Inc.*, 654 P.2d 616, 617 (Okla. 1982). Oklahoma law defines a contract as an "agreement to do or not to do something." 15 O.S. § 1.

31. Settlement agreements may be written or oral. *Russell*, 1 P.3d at 443 (citing 15A Am. Jur.2d Compromise and Settlement, § 10); *see also E. Cent Okla. Elec. Co-op., Inc. v. Okla. Gas & Elec. Co.*, 505 P.2d 1324, 1328 (Okla. 1973); *Mid-Continent Petroleum Corp. v. Russell*, 173 F.2d 620, 622 (10th Cir. 1949); *Vela v. Hope Lumber Supply Co.*, 966 P.2d 1196 (Okla. Ct. App. 1995). A verbal settlement agreement contains the implied promise to sign a written agreement. *Coulter v. Carewell Corp.*, 21 P.3d 1078, 1083 (Okla. Ct. App. 2001); *see also Harris v. Ray Johnson Const. Co., Inc.*, 534 S.E.2d 653, 655 (N.C. Ct. App. 2000) (finding the attorney's acceptance "necessarily contained the implied promise to execute some instrument terminating the controversy as to that settling defendant, namely, the stipulation to dismiss the case with prejudice and release of claims form").

32. Parties can be bound to an agreement reached by their attorneys when the attorney has authority as an agent of his principal-client to enter into settlement agreements on behalf of the client. *Ginner & Miller Pub. Co. v. N.S. Sherman Machine & Iron Works*, 220 P. 650 (Okla. 1923); *Boyd v. Larko-Industrial Painting Corp.*, 356 F.Supp. 917, 923 (W.D. Ark. 1973); *Interior Credit Bureau, Inc. v. Bussing*, 559 P.2d 104, 105-06 (Alaska 1977); *Sheffield Poly-Glaze, Inc. v. Humboldt*

8

*Glass Co.*, 356 N.E.2d 837, 840 (Ill. App. 1976). Moreover, once an offer is accepted, the offer may not be revoked. Restatements (Second) of Contracts § 42 cmt. c (1981) (stating "[o]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such."); *see also Conference Am., Inc. v. Conexant Sys., Inc.*, 508 F.Supp.2d 1005, 108 (M.D. Ala. 2007) ("Except in a small minority of jurisdictions with contrary statutes, 'it is universally settled that a revocation requires communication and that, therefore, an acceptance made prior to a communicated revocation will create a binding contract.'" (quoting Richard A. Lord, *Williston on Contracts* § 5:9)); *Woods ex rel. Woods v. Cory*, 192 S.W.3d 450, 459 ("To be effective, revocation of an offer must be communicated to the offeree before he has accepted.").

33. In *Turley*, *supra*, a situation similar to the present matter was presented to this Court. In that case, the plaintiff was involved in an automobile accident. The plaintiff filed suit against the tortfeasor and his insurer. The parties eventually mediated the matter, which resulted in a settlement agreement between the plaintiff and the tortfeasor. However, the plaintiff refused to sign the settlement agreement or file a dismissal until he finalized negotiations with medicare. Approximately four months after the mediation was completed, the insurer removed the case to federal court asserting the tortfeasor's presence was attributable to fraudulent joinder, and therefore, the tortfeasor could be disregarded for purposes of diversity jurisdiction.

34. The Court agreed with the insurer. But, ultimately, remanded the case concluding the insurer's removal was untimely. In doing so, the court reasoned:

> Under Oklahoma law, a "settlement agreement is a contract between the parties and it will be enforced absent fraud, duress, undue influence, or mistake." *Coulter v. Carewell Corp. of Okla.*, 21 P.3d 1078, 1082 (Okla.Civ.App.2001); see also Ray, 2009 WL 2175971, at * 4 (under Oklahoma law, "court approval is not required for normal settlement agreements to become final and enforceable"). Thus, "[i]n the construction of settlement agreements, the Oklahoma Supreme Court has held [that] [i]f the language of a contract is clear

and without ambiguity, the court is to interpret it as a matter of law. In the absence of fraud or mistake, an executed agreement of settlement is as conclusive against a party seeking to avoid it as the final judgment of a court of competent jurisdiction." *Vela v. Hope Lumber & Supply Co.*, 966 P.2d 1196, 1198 (Okla.Civ.App.1998)(internal quotations omitted). The rules governing settlement agreements apply equally to mediation agreements. *Id*. The existence of a contract is a question of fact, and the "sine qua non of a binding contract" in Oklahoma is agreement on all material terms. *GET, LLC v. City of Blackwell*, No. 10–6068, 2011 WL 103033, at * 1 (10th Cir.2011). Although Stilwell has not yet fulfilled the terms of payment stipulated under the contract, full performance is not required under Oklahoma law before a mediation agreement becomes enforceable. *E.g., Vela*, 966 P.2d at 1197–99 (enforcing mediation agreement in the face of plaintiff's refusal to comply with certain terms of the agreement).

*Id.* at *7.

35. This Court continued:

Here, the mediation agreement appears to set forth all material terms of Turley and United's release of claims as to Stilwell. As neither party has made a showing of fraud, duress, undue influence, or mistake, the mediation agreement is an enforceable contract under Oklahoma law. Thus, if the need to enforce the mediation agreement arises, means to do so exist outside the current litigation. *See Hanahan*, 518 F.Supp.2d at 786. Therefore, after the signing of the mediation agreement, Stilwell was no longer a party in interest to the litigation. Upon the elimination of Stilwell as a party in interest, the case became removable on the basis of diversity jurisdiction, and the thirty-day removal period began to run from the date that the mediation agreement was signed.

*Id.* at *8.

36. Finally, although the this Court did not consider the insurer's fraudulent joinder argument in its ruling, it stated, in a footnote, that:

In support of its claim, United cites *Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879 (10th Cir.1967), for the proposition that the "continued joinder" of a party is fraudulent where it "serves only to frustrate federal jurisdiction." Dkt. # 2, at 6. In *Smoot*, the Tenth Circuit noted with approval the district court's refusal to remand a case for lack of complete diversity where the non-liability of the

> remaining nondiverse party had been "conclusively established," and his "continued joinder" was therefore fraudulent. 378 F.2d at 882. Smoot supports the holding herein that this case was removable as soon as the nondiverse party's status was conclusively established by the mediation agreement.

*Id.* at *9 n. 7.

37. As in *Turley*, Plaintiff has accepted Rahman's offer to settle his claims. (*See* Email correspondence from R. Karpe, dated January 19, 2018, **EXHIBIT 58**; Email correspondence from J. Thetford, dated January 19, 2018, **EXHIBIT 59**.) It is Progressive's understanding that at this time, Plaintiff has not executed a formal Settlement Agreement. (*See* Email Correspondence from R. Karpe, dated January 19, 2018, **EXHIBIT 58**.) However, under Oklahoma law, the acceptance of a settlement offer does not need to be in writing. A settlement offer may be accepted orally. And, a party is bound by an agreement reached by his attorney.

38. As evidenced by Rahman's counsel's email of January 19, 2018, Plaintiff has entered into a settlement agreement with Rahman, the non-diverse Defendant. As in *Turley*, the Court should conclude that as a result of Plaintiff's acceptance of Rahman's settlement offer, Rahman is no longer real-parties in interest. Thus, Rahman's "continued joinder" would only serve to frustrate federal jurisdiction and would be fraudulent.

### PROGRESSIVE'S REMOVAL IS TIMELY AND PROPER

39. Pursuant to 28 U.S.C. § 1446(b), this Notice is timely filed with this Court. Thirty days have not elapsed since Progressive learned of Plaintiff's settlement with Rahman. (*See* Email correspondence from R. Karpe, dated January 19, 2018, **EXHIBIT 58**; Email correspondence from J. Thetford, dated January 19, 2018, **EXHIBIT 59**.) Additionally, one year has not elapsed since the commencement of this action. (*See generally,* Petition, **EXHIBIT 2**.)

40. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be served on counsel for Plaintiff, the adverse party. Additionally, Progressive will serve Rahman with a copy and a copy will be filed with the Clerk of the District Court in and for Tulsa County, State of Oklahoma.

41. Title 28 U.S.C. § 1446(a) states that the defendant shall file the Notice of Removal in "[t]he District Court of the United States for the district and division within which such action is pending." 28 U.S.C. § 1446(a). The Northern District of Oklahoma includes the District Court in and for Tulsa County, State of Oklahoma. 28 U.S.C. 116(c). Therefore, the removal to this Court is proper.

42. Next, the diversity statutes require that none of the parties served as defendants be citizens of the State in which the action is brought. *See* 28 U.S.C. § 1441(b). Progressive is not a citizen of Oklahoma, the State in which this action was brought. Although Rahman is a citizen of the State of Oklahoma, he is no longer a real party in interest. Thus, Rahman may be disregarded for purposes of diversity jurisdiction. *See Becker*, 165 F.2d at 142. This requirement is met.

43. Finally, § 1446 generally requires that all defendants in multi-defendant cases join in the petition for removal or consent to such action. There are, however, exceptions to this rule. *See McCurtain Cnty. Prod. Corp. v. Cowett*, 482 F.Supp. 809, 812 (E.D. Okla. 1978). "An improperly joined party is not required to join in the removal petition." *Id.* at 813; *see also Sycamore Family LLC v. Earthgrains Bakery Companies, Inc.*, No. 2:13-CV-00639-EN, 2013 WL 5883868, at *2 & n. 21 (D. Utah Nov. 1, 2013) (collecting cases). Thus, Rahman does not need to join or consent to this Removal.

WHEREFORE, Defendant, Progressive Northern Insurance Company, removes this action from the District Court in and for Tulsa County, State of Oklahoma, to the United States District Court for the Northern District of Oklahoma.

        Respectfully submitted,

        s/ Brad L. Roberson
        Brad L. Roberson, OBA No. 18819
        Dawn M. Goeres, OBA No. 21923
        PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
        Robinson Renaissance Building
        119 North Robinson Avenue, 11th Floor
        Oklahoma City, Oklahoma 73102
        Telephone:    405-606-3333
        Facsimile:    405-606-3334
        Email:    brad@pclaw.org
            dawn@pclaw.org
        **ATTORNEYS FOR DEFENDANT,**
         **PROGRESSIVE NORTHERN**
         **INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

    John M. Thetford, Esquire
    Reign Karpe, Esquire

I hereby certify that on January 22, 2018, I served the same document by U.S. Postal Service on the following who is not a registered participant of the ECF system:

    Mr. Don Newberry        *VIA U.S. MAIL*
    Tulsa County Court Clerk
    500 South Denver Avenue
    Tulsa, Oklahoma 74103

        s/ Brad L. Roberson
        For the Firm