# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH VICKERS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 18-CV-52-TCK-FHM ) |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court are (1) Defendant Progressive Northern Insurance Company's Motion for Partial Summary Judgment on Plaintiff's claim for Breach of Contract (Doc. 9); (2) Defendant Progressive Northern Insurance Company's Motion for Partial Summary Judgment on Plaintiff's claim for Breach of the Duty of Good Faith and Fair Dealing (Doc. 10); (3) Plaintiff Joseph Vickers's Motion for Summary Judgment (Doc. 12); and Defendant's Motion to Bifurcate Trial (Doc. 76). For reasons discussed below, Defendant Progressive Northern Insurance Company's Motion for Partial Summary Judgment on Plaintiff's claim for Breach of Contract (Doc. 9) is **DENIED**; Defendant Progressive Northern Insurance Company's Motion for Partial Summary Judgment on Plaintiff's claim for Breach of the Duty of Good Faith and Fair Dealing (Doc. 10) is **GRANTED**; Plaintiff Joseph Vickers's Motion for Summary Judgment (Doc. 12) is **DENIED**, and Defendant's Motion to Bifurcate Trial (Doc. 76) is **DENIED AS MOOT**.

**I.  Factual Background** [1]

On January 10, 2015, Plaintiff Joseph Vickers ("Plaintiff") was involved in an automobile accident ("accident") with Jordan Rahman ("Rahman"), in which he sustained bodily injuries.

---

[1] The following facts are undisputed, or as set forth in documentary evidence.

1

Plaintiff was not negligent in causing the accident. At the time of the accident, Rahman had a liability automobile insurance policy with limits of $25,000 per person and $50,000 per accident.

At the time of the accident, Plaintiff was driving a 2005 GMC Sierra ("Sierra") owned by Rick G. or Vicki Vickers. The Sierra was identified on the declarations page of, and insured under, Rick Vickers' business automobile insurance policy by Allmerica Financial Benefit Insurance (of the Hanover Group of Insurance Companies) to Mosquito Man, LLC ("the Hanover Policy") (Doc. 10, Exh. 17, pg. 179). The Hanover Policy had liability coverage on the Sierra, but no uninsured or underinsured motorist coverage ("UM coverage"). Rick Vickers also owned two personal vehicles, which he insured under a policy with Progressive Northern Insurance Company ("the Progressive policy"). Rick Vickers was the named insured of the Progressive policy, while Blake Vickers and Joseph Vickers were listed as "Drivers and household residents." (Doc. 10, Exh. 17, pg. 182.) The Progressive Policy had UM coverage with limits of $100,000 per person and $300,000 per accident, and was in effect at the time of the accident. However, the Sierra was not listed on the declarations page of the Policy.

Additionally, at the time of the accident, Plaintiff resided with Rick Vickers, Plaintiff's father. The Progressive Policy's UM coverage pays for damages sustained by an "insured person," a category that includes resident relatives such as Plaintiff. (Doc. 9, Exh. 7, pg. 105.) However, the Progressive Policy also contains an exclusion ("Exclusion 1(b)"), which states that its UM coverage will not apply to bodily injury sustained by any person while using or occupying:

> b. a motor vehicle that is owned by or available for regular use of **you** or a **relative**.
>
> This exclusion does not apply:
>
> (i.) to a **covered auto** that is insured under this Part III; or

(ii.) to a **relative** who is insured for uninsured motorist coverage under any other motor vehicle insurance policy he or she has obtained

In early 2015, Progressive Northern Insurance Company ("Defendant" or "PNIC") implemented a process for evaluating UM coverage claims that fell within Exclusion 1(b), and developed and implemented guidelines based on the advice of Defendant's counsel, Dawn M. Goeres. These guidelines are as follows:

(a.) When the person seeking UM coverage is using or occupying a motor vehicle which does not fall within the definition of a "**covered auto**," but is owned by or available for the regular use of a person who falls within the definition of "**you**" or a "**relative**," and that motor vehicle is covered by another policy of automobile insurance which provides both liability coverage and UM coverage, PNIC's coverage determination is that the full limit of UM coverage on the PNIC policy of insurance at issue is portable and available to the person seeking UM coverage;

(b.) When the person seeking UM coverage is using or occupying a motor vehicle which does not fall within the definition of a "**covered auto**," but is owned by or available for the regular use of a person who falls within the definition of "**you**" or a "**relative**," and that motor vehicle is covered by another policy of automobile insurance which provides only liability coverage but does not provide UM coverage, PNIC's coverage determination is that Exclusion 1(b) applies to bar coverage, but UM coverage in an amount equal to the statutory mandatory minimum limits of liability coverage will be imputed onto the PNIC policy at issue, and that amount will be portable and available to the person seeking UM coverage; and

(c.) When the person seeking UM coverage is using or occupying a motor vehicle which does not fall within the definition of a "**covered auto**," but is owned by or available for the regular use of a person who falls within the definition of "**you**" or a "**relative**," and that motor vehicle is not covered by any other policy of automobile insurance, PNIC's coverage determination is that Exclusion 1(b) applies to bar all UM coverage under the PNIC policy at issue, and no UM coverage will be portable or available to the person seeking UM coverage.

(Doc. 9, Exh. 9, pg. 134).

The Progressive policy also contains the following provision:

> **TERMS OF POLICY CONFORMED TO STATUTES**
>
> If any provision of this policy fails to conform to the statutes of the state listed on your application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

(Doc. 9, Exh. 7, pg. 24)

## II. Procedural Background

On October 26, 2015, Plaintiff's attorney sent a letter to Defendant, claiming UM benefits under the Progressive policy. After sending this letter, Plaintiff gave a recorded statement for Defendant on December 16, 2015 (Doc. 9, Exh. 4, pg.55), and the parties began to correspond regularly, approximately once a month. (Doc. 10, Exhs. 11-18, pgs. 148-191; Doc. 14, Exh. 11, pg. 159). During this correspondence, in addition to its initial document requests, Defendant requested any policy of insurance in force for the Sierra at the time of the accident—in this case, the Hanover policy—at least twice. (Doc. 10, Exh. 13, pg. 157.) On February 29, 2016, Defendant issued a conditional denial of coverage, as its investigation found no policy of insurance in effect on the Sierra at the time of the accident. (Doc. 10, Exh. 14, pg. 169.) Subsequently, on April 4, 2016, Plaintiff's counsel emailed Defendant the Hanover policy. (Doc. 10, Exh. 13, pg. 173.)

Finally, on May 5, 2016, Defendant sent Plaintiff's counsel a letter indicating that, pursuant to Exclusion 1(b), no coverage existed under the Progressive Policy, but that it had made the business decision to afford $25,000 of UM coverage to Plaintiff. *Id.* When it informed Plaintiff of this decision, Defendant stated that "the decision to afford this amount of coverage is not in any way an admission that coverage exists under the Policy." (Doc. 11, Exh. D, pg. 58.) Plaintiff

4

accepted this offer on May 17, 2016 (Doc. 14, Exh. 11, pg. 160), and Defendant tendered $25,000 on July 1, 2016 (Doc. 9, Exh. 14, pg. 159). Defendant also confirmed that accepting the $25,000 would not waive Plaintiff's right to pursue any claims he believed he had against Defendant.

Plaintiff filed suit against Rahman and Progressive Direct Insurance Company on March 7, 2017. On May 11, 2017, Plaintiff filed his Amended Petition against Rahman and Defendant, who issued the Progressive Policy. After Plaintiff settled his claims against Rahman, Defendant removed this case to this Court on January 22, 2018. (Doc. 2.)

### III. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). In its summary judgment analysis, the Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. Id. However, the party seeking to overcome a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant's claim," but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. (citing FED. R. CIV. P. 56(e)). To meet this burden, the

nonmovant must set forth facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), cert. denied, 506 U.S. 1013 (1992)). "In response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

## IV. Defendant's Motion for Partial Summary Judgment on Plaintiff's claim for Breach of Contract (Doc. 9)

In its Motion for Summary Judgment, Defendant argues that it appropriately denied UM coverage pursuant to Exclusion 1(b), and that Exclusion 1(b) does not violate Oklahoma public policy. Plaintiff, by contrast, argues both that Exclusion 1(b) does not apply to the accident, as the Sierra was not available for Plaintiff's regular use and that Exclusion 1(b) violates Oklahoma public policy, and is therefore void. Accordingly, the Court must first determine whether Exclusion 1(b) violates Oklahoma public policy, and then, if it does not, determine whether it applies to the accident.[2] If Exclusion 1(b) is either void, or does not apply to the accident, then the terms of the Progressive policy apply to the accident. In that case, Plaintiff may introduce

---

[2] The parties disagree about how to determine whether Exclusion 1(b) applies to Plaintiff. Plaintiff argues that Exclusion 1(b) does not apply, as the Sierra was not available for Plaintiff's regular use. (Doc. 11 pg. 16.) Defendant argues that Exclusion 1(b) applies without regard to Plaintiff's status, because the Sierra was owned by and available for regular use by Rick Vickers, the named insured, and was not a covered auto. (Doc. 13 pg.8, incorporated by reference into Doc. 14 pg. 7.) Because the Court finds, *infra* IV., that Exclusion 1(b) is void as applied against Plaintiff, it does not address this issue of contract construction.

6

evidence that he is entitled to coverage under the Progressive policy, and Defendant is not entitled to judgment as a matter of law.

The Court first addresses whether Exclusion 1(b) violates Oklahoma public policy. Because this case is before the Court pursuant to the Court's diversity jurisdiction, Plaintiff's claims are governed by Oklahoma law. *See May v. National Union Fire Ins. Co.*, 84 F.3d 1342, 1345 (10th Cir. 1996). Oklahoma statutes require that, "for the protection of persons insured thereunder," all automobile insurance carriers offer UM coverage to their insureds, unless the insured specifically signs it away. *See* OKLA. STAT. tit. 36 sec. 3636(A) and (B) ("§ 3636"). Section 3636 does not distinguish between uninsured and underinsured vehicles. *See Burch v. Allstate Ins. Co.*, 1998 OK 129, 977 P.2d 1057, 1063 (Okla. 1998). Moreover, UM coverage is not tied to automobiles alone, but rather is tied to the people insured under the policy. *See State Farm Mutual Auto. Ins. Co. v. Wendt*, 1985 OK 75, 708 P.2d 581, 585. Policy exclusions that attempt to limit § 3636, including tying UM coverage to automobiles, are frequently voided as contrary to public policy. *See London v. Farmers Ins. Co.*, 2003 OK CIV APP 10, 63 P.3d 552, 555 (Okla. Civ. App. 2002) (collecting cases). However, Courts have demonstrated a willingness to uphold policy exclusions to UM coverage when they are limited to individuals who own a vehicle and have therefore had an opportunity to purchase their own UM coverage. *See Ball v. Wilshire Ins. Co.*, 2009 OK 38, 221 P.3d 717, 730 (Okla. 2009).

Within the limits of public policy, Oklahoma insurance policies are issued pursuant to statutes and the Court will interpret those policies in light of the statute, but will not rewrite the contract. *See Shepard v. Farmers Ins. Co.*, 1983 OK 103, 678 P.2d 251. When interpreting an automobile insurance contract, a Court must strive to strike a balance between freedom of contract principles and the state's interest in protecting the public. Parties to an insurance contract are free

7

to agree on any terms that they wish, including whether to limit or restrict the insurer's liability, as long as their agreement does not contravene public policy. *See Ball*, 221 P.3d at 726.

In 2004, § 3636 was amended to include the following language: "E. For purposes of this section, there is no coverage for any insured while occupying a motor vehicle owned by, or furnished or available for the regular use of the named insured, a resident spouse of the named insured, or a resident relative of the named insured, if such motor vehicle is not insured by a motor vehicle insurance policy." After this amendment, however, the Oklahoma Supreme Court held that the phrase "motor vehicle insurance policy" meant "uninsured motorist coverage." *See Morris v. Am. First. Ins. Co.*, 2010 OK 35, 240 P.3d 661, 664 (Okla. 2010).

Since 2004, § 3636(E) has been interpreted twice by the Oklahoma courts. First, in *Conner*, the plaintiff was a resident relative of his parents, named insureds of an automobile insurance policy that included UM coverage. *See Conner v. Am. Commerce Ins.*, 2009 OK CIV APP 61, 216 P.3d 850, 851 (Okla. Civ. App. 2009). He also owned a motorcycle, insured through a separate insurance company, under which he rejected UM coverage. While driving his motorcycle, the plaintiff was in an accident with an allegedly underinsured motorist. His parents' insurance company denied him UM coverage under a policy exclusion that did not allow UM coverage for a vehicle which that company did not insure and that was not otherwise covered for UM coverage by any other insurance. The Court held that, because UM coverage is mandatory unless waived, the plaintiff had the opportunity to purchase his own UM coverage. Because the plaintiff had the opportunity to purchase his own UM coverage on his motorcycle, the policy exclusion in his parents' policy did not run afoul of § 3636(E). *Id.*

Later, in *Morris*, a plaintiff was in an accident with an uninsured motorist while driving a business vehicle that was insured for liability insurance only. However, the plaintiff also owned

8

two personal vehicles that he insured for both liability and UM coverage. The Court held that the plaintiff was entitled to rely on past holdings that UM coverage follows the person, not the vehicle, when he decided to purchase UM coverage for his personal vehicles but not a separate UM policy for his business vehicle. The plaintiff was also a resident insured under his mother's automobile insurance policy. Because he was separately covered, his mother's insurance company could not exclude UM coverage from the plaintiff as a resident insured simply because the specific vehicle he was driving was not insured under a policy that included UM coverage. *See Morris*, 240 P.3d at 664.

Defendant correctly notes that *Morris* is factually distinguishable from the instant case, as the plaintiff in *Morris* was the owner of the two personal vehicles for which he purchased both liability and UM coverage, and because it was undisputed that the plaintiff was covered for UM coverage under his personal policy. However, Defendant appears to rely on the holding in *Conner*, adopted in *Morris*, in which the Court of Civil Appeals of Oklahoma upheld a policy exclusion to UM coverage that is similar to Exclusion 1(b), to argue that Exclusion 1(b) cannot violate Oklahoma public policy.

While Defendant is correct that the policy exclusion upheld in *Conner* is very close to Exclusion 1(b), Defendant is incorrect that this Court can merely import these holdings onto the facts of this case. *Conner* addressed an insurance company's ability to exclude from coverage resident insureds who own their own vehicles and have purchased their own, separate, insurance policies to cover those vehicles. Oklahoma courts have long permitted insurance companies to exclude resident insureds from UM coverage when those insureds owned their own vehicles. *See Ball*, 221 P.3d at 730; *Shepard*, 678 P.2d at 252-53. These decisions turn not on the resident insured's status as a resident insured, but rather on the resident insured's opportunity to purchase

9

his or her own UM coverage. Because a resident insured who owns his or her own vehicle has the opportunity to purchase UM coverage for that vehicle, a policy exclusion does not run afoul of § 3636 if it excludes a resident insured from UM coverage while that resident insured is driving his or her own separately insured vehicle. *See Ball*, 221 P.3d at 730 ("[A] review of our extant UM jurisprudence reveals . . . a willingness to uphold UM exclusions which by their express terms are limited to individuals who own a vehicle and who have thus had the opportunity to purchase their own UM coverage.")

Accordingly, the facts in this case are distinguishable from those in *Conner*. While both the plaintiff in *Conner* and the Plaintiff in this case are resident insureds, the plaintiff in *Conner* owned and insured the vehicle in which he got into an accident with an allegedly underinsured motorist. When the plaintiff in *Conner* insured that vehicle, he was offered, and declined, the opportunity to insure that vehicle for UM coverage. Unlike the plaintiff in *Conner*, in the present case, Plaintiff did not own the Sierra. In fact, Plaintiff did not own any vehicle. Accordingly, Plaintiff did not have the opportunity to purchase his own UM coverage. Instead, he relied on his status as a resident insured under the Progressive policy when he drove automobiles that were owned and insured by his father, the named insured on both the Progressive policy and the Hanover policy.

Though Exclusion 1(b) may be acceptable in other factual contexts, including those described in *Conner*, in the context of this case, Exclusion 1(b) purports to exclude resident insureds who do not own their own vehicle from UM coverage whenever they are driving vehicles available for their regular use that are not insured under the Progressive policy. This policy exclusion violates the line of cases holding that UM coverage follows the person, not the vehicle. *See Morris*, 240 P.3d at 664. Moreover, unlike in *Conner*, Plaintiff did not have, and then decline,

the opportunity to purchase UM coverage on this vehicle. In this case, Plaintiff was simply a resident relative, insured under the Progressive policy, who had no other opportunity to purchase UM coverage and was entitled to rely on past Oklahoma holdings that UM coverage follows the person, not the vehicle.

Accordingly, the same reasoning that justified the policy exclusion in *Conner* now requires the conclusion that Exclusion 1(b) is void against Plaintiff under this particular set of facts: without an opportunity to purchase his own UM coverage of the vehicle that was involved in an accident with an underinsured motorist, excluding Plaintiff from coverage as a resident insured under the Progressive policy runs counter to § 3636's description of UM coverage as being coverage "for the protection of persons insured thereunder." OKLA. STAT. tit. 36 sec. 3636(B). Moreover, Defendant's argument that only the statutory minimum UM coverage is required is unavailing, as Defendant relies on a line of cases that address an insurer's obligation when they failed to offer UM coverage, not cases where an exclusion to UM coverage is found void. *See, e.g.*, *Boerstler v. Hoover*, 1997 OK 106, 943 P.2d 614, 616 (Okla. 1997); *May v. Nat'l Union Fire Ins. Co.*, 1996 OK 52, 918 P.2d 43, 44-45 (Okla. 1996). Accordingly, Exclusion 1(b) is void as applied against Plaintiff in this case.

Finally, Defendant appears to argue that when Plaintiff's father purchased the Progressive policy, he purchased a policy that contained Exclusion 1(b), and allowing Plaintiff to recover under the Progressive policy's UM coverage would allow Plaintiff to receive coverage which his father had not purchased. Additionally, Defendant argues that insurance policies are contracts that may contain bargained-for exclusions. (Doc. 13 at pg. 14, incorporated by reference into Doc. 14 at pg. 8.) However, while insurance contracts are generally subject to freedom of contract principles, they are also construed in accordance with statutes. If a policy exclusion conflicts with the public

policy of Oklahoma, that policy exclusion will be void against public policy. *See Ball*, 211 P.3d at 730; *London*, 63 P.3d at 555. In this case, Exclusion 1(b) does conflict with a statute—Oklahoma courts have held for years that UM coverage follows the person, not the vehicle. Despite that, Exclusion 1(b) appears to limit UM coverage to specific vehicles for resident insureds who do not own their own vehicles. Accordingly, Exclusion 1(b) is void as applied against Plaintiff for violating Oklahoma public policy, and summary judgment is not appropriate. Because Exclusion 1(b) is void as applied against Plaintiff, the Court does not reach whether Exclusion 1(b) applies to Plaintiff.

Finally, because Exclusion 1(b) is void against Plaintiff, should Plaintiff prove the necessary preconditions of loss under the Progressive policy's UM coverage, Plaintiff will be entitled to recover the full extent of his damages, up to the policy limit. The Progressive policy states "if any provision of this policy fails to conform to the statutes of" Oklahoma, "the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect." (*Supra*, I.) Further, Oklahoma law also requires that Exclusion 1(b) be "construed and applied in accordance with such conditions and provisions as would have applied had such policy . . . been in full compliance with [the Oklahoma Insurance Code]." *See* OKLA. STAT. tit. 36 sec. 3620; *Davis v. Progressive Northern Ins. Co.*, 2012 OK CIV APP 98, 288 P.3d 270 (Okla. Civ. App. 2012). Accordingly, Exclusion 1(b) will be construed in conformance with § 3636, and the policy limit will be given full force and effect.

**V.      Defendant's Motion for Partial Summary Judgment on Plaintiff's claim for Breach of the Duty of Good Faith and Fair Dealing (Doc. 10)[3]**

Plaintiff argues that Defendant's conduct in delaying payment of benefits under the Progressive policy and selling a policy containing the "unlawful policy provision" of Exclusion 1(b) amounts to a breach of the duty of good faith and fair dealing. (Doc. 2-2, at pg. 5-7.) An insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *See Christian v. Am. Home Assur. Co.*, 1977 OK 141, 577 P.2d 899, 901 (internal citations omitted). Accordingly, an insurer may be liable in tort for unreasonably and in bad faith withholding payment of the claim of its insured. *See id.* at 904. However, to be liable in this manner, an insurer's conduct must be more than simple negligence. *See Badillo v. Mid. Century Ins. Co.*, 2005 OK 48, 121 P.3d 1080, 1094 ("In our view, under *Christian* and later cases, the minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer.")

The critical question determining if an insurer acted in bad faith is whether the insurer had "a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding or delaying payment under the policy." *See Ball*, 221 P.3d at 725 (internal citations omitted). If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith.

---

[3] In his Amended Complaint, Plaintiff styled this claim as a claim for "Bad Faith and Unfair Dealings." (Doc. 2-9 at pg. 5.) Claims for Breach of the Duty of Good Faith and Fair Dealing are often styled as "bad faith claims." *See, e.g.*, *Garnett v. Gov't Emp. Ins. Co.*, 2008 OK 43, 186 P.3d 935, 944 (Okla. 2008); *Badillo v. Mid. Century Ins. Co.*, 2005 OK 48, 121 P.3d 1080, 1098 (Okla. 2005). Accordingly, the Court has construed this claim as a claim for Breach of the Duty of Good Faith and Fair Dealing.

*Id.* "Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious." *See Garnett v. Gov't Emp. Ins. Co.*, 2008 OK 43, 186 P.3d 935, 944 (Okla. 2008).

There is no conclusive, precedential legal authority requiring coverage in the present factual circumstances. As noted *supra*, IV, § 3636(E) has been interpreted twice by Oklahoma courts, in the two cases relied upon by the parties, *Conner* and *Morris*. However, both *Conner* and *Morris* address fact patterns where the resident insureds also owned the vehicle that they were driving when they were in an accident with an uninsured or underinsured motorist. Both of those plaintiffs had therefore insured the vehicle they were driving for liability coverage, and had been offered the opportunity to purchase UM coverage, which they both rejected. Accordingly, though both cases interpret § 3636(E), neither case required the outcome reached by those courts.

Further, though this Court has ultimately determined that both *Conner* and *Morris* support the finding that Exclusion 1(b) violates public policy as applied to Plaintiff in this case, Defendant presented a reasonable argument supporting its claim that, under *Conner*, § 3636(E) does not require UM coverage in this case. Defendant argued that Exclusion 1(b) did not violate Oklahoma public policy under § 3636(E), interpreted by the Oklahoma Supreme Court in *Morris,* and the Court of Civil Appeals of Oklahoma's holding in *Conner*, upholding an exclusion similar to Exclusion 1(b). Though the Court ultimately held to the contrary under the facts of this case, the Court cannot find that Defendant's reliance on this argument to deny coverage, or to sell a policy containing Exclusion 1(b) is conduct that rises above simple negligence, or that Defendant's conduct may be reasonably perceived as tortious.

14

Further, though Defendant may not rely on patent legal mistakes made by an attorney, Defendant may rely on reasonable advice of counsel in denying coverage. *See Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 174 (Okla. 2000). In this case, Defendant behaved in accordance with the guidelines for the application of Exclusion 1(b) that it developed based on the advice of its counsel when it offered Plaintiff $25,000, the statutory mandatory minimum of UM coverage. *See* OKLA. STAT. tit. 38 sec 3636; OKLA STAT. tit. 47 sec 7-204; OKLA STAT. tit. 47 sec 7-324. The guidelines which Defendant used to determine coverage in the instant case demonstrate a reasonable and accurate understanding of *Morris*, and its construction of § 3636(E) to apply not to all "motor vehicle insurance polic[ies]," but rather to UM coverage. Further, the guidelines demonstrate a reliance on and reasonable understanding of *Conner*, which upheld an exclusion similar to Exclusion 1(b) under similar, but not identical, circumstances, and which was apparently adopted by *Morris*. (Doc. 10, Exh. 10.) Though the Court has ultimately determined, after detailed analysis, that the holding of *Conner* does not require the same outcome in the instant case, it cannot be said that Defendant's contention that *Conner* is binding is unreasonable or based on a patent legal mistake. Accordingly, Defendant's argument, in the absence of conclusive, precedential legal authority requiring coverage, was reasonable. Construing the facts most favorably for Plaintiff, Defendant's conduct may not reasonably be perceived as tortious, and summary judgment is appropriate.

Plaintiff further alleges that Defendant acted in bad faith by "misrepresenting available coverage to an insured, fraudulently concealing available policy provisions, [and] failing to assist an insured process a claim for benefits." (Doc. 2-9 ¶ 28.) If these allegations proved accurate, it is possible they could support a claim that Defendant acted in bad faith. *See Garnett*, 186 P.3d at 945 (discussing conduct that qualified as bad faith conduct by an insurer who insures both parties,

including both misrepresentations and fraudulent misrepresentations). However, to successfully prove actual fraud, Plaintiff must show "an intentional misrepresentation or concealment of a material fact, with an intent to deceive, which substantially affects another person." *Horton v. Hamilton*, 2015 OK 6, 345 P.3d 357, 363 (Okla. 2015) (internal citations omitted). Plaintiff has not presented evidence or undisputed facts that demonstrate any intentional misrepresentation or concealment of material fact, and the Court can find none. Similarly, to demonstrate constructive fraud, a Plaintiff must show "a breach of a legal duty or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive or actual dishonesty of purpose." *Id.* However, an insurer owes no duty to explain a policy to an insured; rather an insured is chargeable with the knowledge of the terms and legal effect of his insurance policy. *Nat'l Fire Ins. Co. v. McCoy*, 1951 OK 379, 239 P.2d 428, 430 (Okla. 1951). Additionally, insurance companies and their agents have no duty to advise an insured with respect to his insurance needs. *Rotan v. Farmers Ins. Group of Cos., Inc.*, 2004 OK CIV APP 11, 83 P.3d 894, 895 (Okla Civ. App. 2004), quoting *Mueggenborg v. Ellis*, 2002 OK CIV APP 88, 55 P.3d 452, 453 (Okla. Civ. App. 2002).

Because Defendant has made this prima facie showing, the burden shifts to Plaintiff to go beyond the pleadings and set forth specific, admissible facts from which a rational trier of fact could find for him. *See Alder*, 144 F.3d at 671. However, Plaintiff has put forward neither undisputed facts nor evidence to support these allegations. Accordingly, Plaintiff cannot show that Defendant had a duty to describe Plaintiff's coverage under the policy, to advise Plaintiff's father as to which policy he should purchase, or to assist Plaintiff to process a claim for benefits, and none of Plaintiff's allegations are sufficient for Defendant's conduct to be reasonably perceived as tortious.

Plaintiff also argues that Defendant acted in bad faith by "failing to timely and properly adjust a claim for benefits, by conditioning adjust of his claim for benefits on unnecessary and frivolous requests for information that it already had." (Doc. 2-9 ¶ 28.) In essence, Plaintiff argues that Defendant conducted an unreasonably lengthy and duplicitous investigation. When presented with a claim, an insurer "must conduct an investigation reasonably appropriate under the circumstances. The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." *Badillo*, 121 P.3d at 1098, quoting *Buzzard v. Farmers Ins. Co., Inc.*, 824 P.2d 1105, 1109 (Okla. 1991).

However, Plaintiff has failed to produce evidence that Defendant conducted an unreasonably lengthy or duplicitous investigation. After Defendant first received notice of Plaintiff's claim, Plaintiff's counsel and Defendant exchanged productive, professional letters approximately once a month. (Doc. 10, Exhs. 11-18, pgs. 148-191; Doc. 14, Exh. 11, pg. 159). Indeed, it appears that, except for Defendant's initial request for documents, virtually Defendant's only request for evidence was the repeated request for any policy of insurance in force for the Sierra at the time of the accident—the Hanover policy. (Doc. 10, Exh. 12-13, pg. 152-163.) Plaintiff did not produce the Hanover policy, however, until April 4, 2016, approximately one month after Defendant conditionally denied coverage because its investigation found no insurance policy in effect on the Sierra at the time of the accident. (Doc. 10, Exh. 14 and 15, pgs. 169-174.) Defendant also informed Plaintiff that it denied that coverage existed under the Progressive policy, but had made the business decision to afford $25,000 of UM coverage on May 5, 2016, only a month after Plaintiff produced the Hanover policy. Plaintiff accepted this offer on May 17, 2016, and Defendant tendered the $25,000 on July 1, 2016, approximately six weeks later. Moreover,

there are no undisputed facts or documentary evidence that suggest that Defendant's investigation was unreasonable.

Similarly, Plaintiff has failed to meet the burden placed on him after Defendant made its prima facie case, to put forward specific, admissible facts which could support a claim of bad faith. In this case, Plaintiff has not pled any specific facts indicating that Defendant's investigation was not reasonable. Moreover, all documentary evidence indicates that the pace and scope of Defendant's investigation was reasonable. Because it was reasonable, Defendant's investigation cannot support a claim of breach of the duty of good faith and bad dealing.

Finally, Plaintiff claims that Defendant breached its duty of good faith and fair dealing "by compelling their insured to employ legal counsel in order to obtain benefits." However, it is not bad faith for an insurer to seek a judicial resolution to a legitimate dispute. *See Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 2000 OK 55, 11 P.3d 162, 171 (Okla. 2000). Accordingly, the simple fact that Plaintiff was required to employ counsel in this case does not demonstrate bad faith. In this case, the parties had a reasonable dispute about whether Exclusion 1(b) violated public policy, and as such, whether Plaintiff was entitled to coverage under the Progressive policy. Accordingly, Plaintiff's decision to initiate this lawsuit does not demonstrate that Defendant acted in bad faith.

## VI. Defendant's Motion to Bifurcate Trial (Doc. 76)

Defendant has requested that the Court bifurcate this trial into two stages, and limit consideration of the amount of punitive damages to be awarded, if any, to the second stage. However, the Court has granted Defendant's Motion for Summary Judgment on Plaintiff's claim of breach of the duty of good faith and fair dealing. Because the minimum level of culpability necessary for a bad faith claim is less than the reckless conduct necessary to justify punitive damages, in granting Defendant's motion, the Court has determined Defendant's culpability to be

less than the level of culpability necessary to justify punitive damages. *See Badillo*, 121 P.3d at 1094. As such, punitive damages are not available in this case, and Defendant's Motion to Bifurcate is denied as moot.

### VII. Plaintiff's Motion For Summary Judgment (Doc. 12)

Breach of contract is a "material failure of performance of a duty arising under or imposed by agreement." *See Petsmart Inc. v. Dancor Constr., Inc.*, No. 17-cv-0361, 2018 U.S. Dist. LEXIS 180379, *14 (internal citations omitted). To prevail on a claim for breach of contract, a party must prove (1) the existence of a contract, (2) breach of that contract; and (3) actual damages suffered as a result of the breach. *Id.* (internal citations omitted); Oklahoma Uniform Jury Instruction—Civil No. 23.1. To establish that Plaintiff had a valid claim under UM coverage, such that Defendant refusing to provide UM coverage up to the limits of the Progressive policy would constitute a breach of contract, he must "demonstrate that the preconditions of loss under the policy's UM coverage exist." *See Gates v. Eller*, 2001 OK 38, 22 P.2d 1215. These preconditions include at least (1) that the tortfeasor is uninsured or underinsured, and (2) that the tortfeasor is at fault, which gives rise to damages. *See id.*; *Uptegraft v. Home Ins. Co.*, 1983 OK 41, 662 P.2d 681, 685 (Okla. 1983).

In this case, Plaintiff has not presented sufficient evidence for this Court to find that there is no genuine dispute of material fact as to the two preconditions named above. Plaintiff has presented evidence of only $7,494.72 in damages. (Doc. 2-19.) Defendant, in its response to Plaintiff's Motion for Summary Judgment, presented evidence of $24,965.12 in damages.[4]

---

[4] Defendant notes that $11,519.40 of $17,519 charge for Plaintiff's shoulder surgery appear to have been written off by the medical provider, Three Rivers Surgical Care. (Doc. 13, Exh. 12, pg. 92.) If this is accurate, Defendant's evidence would demonstrate only $13,445,72. However, because it is not necessary to rule on the instant motion, the Court does not address the significance of this exhibit.

Neither of these exceed Rahman's liability limit of $25,000. Accordingly, there is a genuine dispute of material fact as to whether Rahman was underinsured. Similarly, Plaintiff has provided no evidence and no undisputed facts indicating that Rahman was at fault. Because there is a genuine dispute of material facts as to whether Plaintiff's UM coverage claim is valid, summary judgment for Plaintiff is not appropriate.

## VIII. Conclusion

For the reasons set forth above, the Court finds a genuine dispute of material fact as to whether Progressive has engaged in breach of contract. Accordingly, summary judgment for either party as to breach of contract is inappropriate. However, the Court finds no genuine dispute of material fact as to whether Progressive has breached its duty of good faith and fair dealing. Accordingly, summary judgment as to that claim is appropriate.

Defendant Progressive Northern Insurance Company's Motion for Partial Summary Judgment on Plaintiff's claim for Breach of Contract (Doc. 9) is **DENIED**.

Defendant Progressive Northern Insurance Company's Motion for Partial Summary Judgment on Plaintiff's claim for Breach of Duty of Good Faith and Fair Dealing (Doc. 10) is **GRANTED**.

Plaintiff Joseph Vickers's Motion for Summary Judgment (Doc. 12) is **DENIED**.

Defendant's Motion to Bifurcate Trial (Doc. 76) **DENIED AS MOOT.**

**SO ORDERED.**

**DATED THIS 19th day of November, 2018.**

*/s/ Terence C. Kern*
**TERENCE C. KERN**
**United States District Judge**